The first one is number 241725, Rensselaer Polytechnic Institute versus Amazon. Mr. Zhu. Good morning, Your Honors. Li Zhu for Appellants Rensselaer Polytechnic Institute and CF Dynamic Advances. This case asks whether a district court may set aside its own claim constructions and reduce a specific computerized method to mere storing and searching information under Section 101. Through two detailed Markman orders and six years of litigation, the court found that the claims require, among other things, a constrained search based solely on the natural language input, a specific metadata database, the use of four categories of metadata, all four, including case information, and connections among those categories. How is this different from recentive? Well, Your Honor, respectfully, recentive analytics analyzed four patents that attempted to claim the very nature of machine learning. The claims didn't specify any new way for the computer to operate, only a goal which was within event scheduling. The court also found that recentive had, quote, conceded the lack of a technological improvement, and the claims and the specification didn't have that improvement as well. By contrast, here, the claims are directed to a specific technological improvement over existing natural language processing systems. And that is reflected in the claim constructions for. Oh, it's using AI, right? That's one way, Your Honor. I would say that artificial intelligence, that includes a broad swath of different methods and implementations. But it can't be non-abstract to use AI for natural language processing, right? Well, I think that's a fairly loaded question, Your Honor, respectfully. There is a specific answer to it. The answer to that question is that the claims here require a lot more. We know from the claim construction. Answer my question. If it were just the use of natural AI in connection with natural language processing would be abstract, right? If that's all the claims said, that's correct, Your Honor. It would be an abstract. So what else is there here? Sorry? What else is there here? Well, there is a connected enterprise metadata database. And we know that from the construction for the term information models, which were construed at Appendix 2613 as, quote, webs of concepts for enterprise databases. And these are connections that must exist between the four claim metadata categories. And these are structural connections in the database. These connections are also captured through Claim 17's excuse me, Claim 4 and 14 through 17's reference dictionary, which was construed as, quote, the set of database entries and their relations. And the specification repeatedly describes this interconnected nature of the metadata database. For example, in column 17, line 6 through 24, and that's the section entitled case-based reasoning, Your Honor, it describes how. I'm not sure that I understand what you're saying. You're saying that this uses a different kind of database? That's correct, Your Honor. A never-before-seen database. So I'm not sure that you raised that issue below. Where did you raise that issue below? Specifically with respect to the claim constructions for information model, where we describe it as an interconnected database, and in the way that the four types of data series. Where did you argue that the nature of the database made it non-abstract? That's in our argument with respect to NFISH, Your Honor, when we compare the events. Could you show me where you argued that? Yes, Your Honor. So in our reply, Your Honor, in the argument and reply at page one, we specifically describe how the claimed invention is directed to applying. You're talking about the reply brief here? That's correct, Your Honor. No, I'm not asking you that. I'm asking you where you raised this below. Oh, apologies, Your Honor. Well, if you can't find it, you can try giving it on the bottom. Apologies, Your Honor. It's at appendix 4406, where we describe the exemplary claim one as being directed to a specific metadata database with an interconnected architecture of four key types of metadata. And we specifically mentioned the four enumerated categories of metadata and the constructions. And where does it argue that that makes it non-abstract? Well, Your Honor, it's in the appendix 4406, where that's not the only thing in the claims that makes claim one non-abstract. Well, where do you argue that the specific nature of the database renders it non-abstract? It's the interconnected nature of the database, Your Honor. Well, where do you argue this? Apart from appendix 4406, we also describe how it's Where is it on, I don't see where you argue that on 4406. So that's page 13 of our summary judgment opposition, where we're arguing against the high level of abstraction that was argued by appellees below. And we specifically say, five lines above the bottom of that page, exemplary claim one is directed to a specific metadata database with an interconnected architecture of four key types of metadata. Where does that say that makes it non-abstract? It's within the context of our argument that claims are directed to a new method for processing natural language input by storing the four types of metadata and then using that metadata. And the claims and the specification describe how that information is used and why that metadata database has to be interconnected. That's in column 17 of the specification specifically, where it describes, quote, are connected to information models and database values through particular meta relationships. If I assume that you've preserved that argument, help me with recentive though, because I'm sure you're aware of the very last line of recentive. We say, we hold that patents that do no more than claim the application of generic machine learning to new data environments without disclosing improvements to machine learning models are patent ineligible, obviously therefore abstract. Isn't your answer that you've just given us precisely within the scope of that holding? You're saying, just do this in a new data environment, aren't you? But it's not just that, Your Honor. It's looking at how the specification describes prior art systems. Natural language processing systems had never used case information before, and it was never architected in the way as shown in the claims here. But that's exactly what recentive says is not sufficient to render it non-abstract. The use of AI in natural language processing you agreed earlier doesn't render it non-abstract. I agree again, Your Honor, that the use of artificial intelligence itself, if that's all the claims say, that wouldn't render an invention non-abstract. But here we have the interconnected metadata database. Here we also have the constructions for case information and case, which were construed as specifically prior instances of use of the natural language processing method, and not just any past language data, and not just of any NLP system. But also, it's reflected within the court's construction of the without augmentation limitation, Your Honor. And as construed, that claim search must be, quote, based solely on the natural language input. Where does the patent itself tell us how the technique applies case-based reasoning? That's a good question, Your Honor. The patent specifically describes case-based reasoning in numerous places. And I would begin by directing the court to column 17, where it describes the keywords in the cases being connected to the information models. But it's also reflected, for example, in column six, where it describes, based on this analysis, a reference dictionary is used that integrates enterprise metadata, information models, and contextual knowledge with case-based reasoning. In fact, the summary of the invention describes the case-based interaction method. But more specifically, column 16 in the section entitled case-based reasoning details the structure of the cases, and then the connections between the cases, and the three other metadata types. Let me assume for the moment it's in column 6, 16, and 17. What is in the claims, other than just functional language? Respectfully, Your Honor, there's more than just functional language when the claims are interpreted in light of their claim constructions. So here, the district court recognized that case information in cases are prior instances of the use of the natural language processing method at Appendix 41. Case information is AI, right? Well, taking a historical record of how this specific patented information was being used in prior uses, that's not something that ever exists within natural language processing. And I don't believe the court is saying that anything that uses an artificial intelligence would therefore not be patent eligible. And here in the claims, there's a specific implementation of that artificial intelligence of the specific form of case-based reasoning discussed within the specification and as construed. But even if case-based information is as construed and it's got that meaning in the claims, all the claims tell us to do is provide, perform, provide, identify, and determine. It doesn't really tell us anything other than those functions, does it? Well, the claims claim and the specification teaches. But I would also point to the court's claim constructions for exactly those two limitations. So the determining the combinations in claim 1 and the interpreting the permutations in claim 9 as construed at the Markman order at appendix 27 specifically are used to quote, determine candidate interpretations of the user's natural language input. And we know from column 7 in the specification, lines 49 through 60, that it is this logical structure that is critical to how the invention operated. You take away any of those elements and you wouldn't have the improvement that's reflected in the claims and the specification. I got one other. The district court notes in both footnotes 3 and 6 that you oppose summary judgment in part based on a purported fact dispute. Can you tell me what that fact dispute was and are you making that argument here or is that not one we have to deal with? Well, there are two facts that are especially relevant here, your honor. The first is that it is undisputed that there was no case-based reasoning with a natural language processing. And the second is with respect to- That's not fact dispute, right? You say that's conceded, okay. Right, and with respect to the mental process argument that was made below, there is a factual, at worst a factual dispute, at best a conceded fact from the other side that a person of ordinary skill or a human wouldn't be able to implement the claim process in their minds. But did you argue below summary judgment on 101 should not be granted to them because of that second fact dispute or is that not what the district court's talking about in these two footnotes? So that wouldn't be what the district court is referring to in those two footnotes, but we would say that those concessions and those material facts are relevant to the 101 assessment. Is there any fact dispute here that you're now arguing to us should cause us to reverse and remand or is that not in the works? No more fact dispute, your honor. Okay. Do you want to save your rebuttal time? Yes, your honor. Thank you very much. Mr. Annapol. May it please the court. The problem with plaintiffs, our appellant's position here and the arguments we just heard from Mr. Zhu is that they rely on material that is not claimed. This interconnected architecture is not in the claims. Any specific way of using case-based reasoning is not in the claims. Any improvement purportedly disclosed in the specification is not in the claims. Now, I just want to make sure I understand your argument. When you say it's not in the claims, you mean it's also not in the claim constructions adopted by the district court, which are unchallenged here. That's correct, your honor. And I can go through all of these through those claim constructions specifically. So Mr. Zhu mentioned information models. The construction there is webs of concepts for enterprise databases. Every database has webs of concepts in it. It might represent orders, it might represent customers, it might represent items that are purchased. And all of those concepts are linked together in any database. In fact, if you look at Appendix 78, which is Column 12 of the patent, lines 12 to 24, it explains that information models are webs of concepts for enterprise databases. And it's clear from the context that those enterprise databases are conventional. This is Column 12? Yes, your honor. What line? Is it 12 to 24, is that right? Yes, this is where the construction comes from. It says, in the database field, information models are webs of concepts for enterprise databases. So this was already the preexisting notion of information models that was known in the field. Just to make sure I'm following your argument, that means, I think, webs of content, webs of interconnected content, are in the claims. It's just, it's nothing novel. Right, that's just describing how normal databases work. They have an information model. I thought your argument was nothing that the appellant says is in the claims is actually in the claims, but at least this part you can see is in the claims. Right, there's no technological improvement in the claims, because that's just referring to a normal database, your honor. Also, interconnections in databases, this court has repeatedly held, for example, in ERIE, SAP, and RECENTIV, don't make a claim patent eligible. So the database in ERIE had relationships, that's on page 1326 of ERIE. The database in SAP had correlation between different information stored in the database, that's page 1169 of the SAP America case that we cited. And RECENTIV, on page three, includes a step of identifying relationships between information in the machine learning model. So nothing about having conceptual relationships between information makes a claim patent eligible. What's important is that there's no specific relationships claimed here. The general notion that information in a database is related doesn't improve computer technology. And there's no specific relationships that are in the claim. But as you know, they're saying what their patent does is allow a user to use natural language and learn from it, and the model learns from itself. That's what this case-based information is. What's your argument as to why that is not patent eligible? So the idea of learning from natural language is something that humans have done for thousands of years. So it's conventional mental steps. That's one reason. If it's conventional maybe for us, is it conventional for computers? Well, it was conventional for computers, but our argument doesn't depend on that, Your Honor. The general idea of learning, having a computer learn, doesn't make something patent eligible, even if... Well, that's AI, right? Yes, so AI is a field, and it's a field of trying to make computers learn, and that is an abstract idea. So your position is all AI is not patent eligible? No, Your Honor. The general idea of having a computer learn is not patent eligible. And so, and that's for several reasons, because humans learn, because if you don't say how to learn, it's functional. And this court held in recentive, for example, that applying machine learning to a specific environment doesn't make a claim patent eligible. And so by the same logic, applying case-based reasoning to a specific field doesn't make a claim patent eligible. I wanna make sure I didn't misunderstand your negative answer to my probably negative question. Your contention is some artificial intelligence could be patentable under current law. It's just that the patent in front of us is not? Is that your position? Yes, Your Honor, that some specific implementations of artificial intelligence could be patent eligible. And that's what it says on the last page of the recentive opinion, that the court's holding in that case that merely applying conventional machine learning to a computer environment wasn't patent eligible there. It doesn't mean that no machine learning is patent eligible. If you have a specific improvement to the way that the computer does it, then it could be patent eligible. And- The idea of using machine learning in a particular environment, like natural language, under recentive is not patent eligible. That's correct, Your Honor. And that's what we have here. The argument is that they were the first to apply case-based reasoning, which is a way of making a computer learn, to natural language. Even if that were true, it wouldn't be patent eligible because that's merely confining an abstract idea to a particular field of use. And importantly here, or additionally, they admitted to the district court that case-based reasoning has been well known since the 1970s. So it's an admittedly conventional learning technique and they're merely applying it to a particular field of use. And as the- They tell us at least today that they think they invented a specific improvement, that they did come up with a particular technological solution to a technological problem or technical problem with computers. And they have a specific improvement that had not been done before. How do I evaluate that? That sounds like a fact question to me. Well, you evaluate that by looking at the claims, Your Honor, and seeing that any purported improvement in the claims is, sorry, any purported improvement described in the specification is not in the claims. So what the specification describes as the purported improvement is this search and learn approach. And specifically, this is also what appellants rely on on page three of their reply brief when they're saying that they have a computer-specific solution. They refer to the patent's disclosure at column six and they say that's where the improvement is. And that, if you look at it, Your Honor, this is on Appendix 75, column six, starting at lines 39. This is what they cite as the source of their purported improvement in the spec. It says, the strategy uses a concept referred to herein as search and learn, and then it goes and explains a little bit about the search and learn. There's further disclosure of search and learn at column 15, for example, that goes through the steps of search and learn. They pointed to this in the district court as well, and Judge Sanis explained at Appendix pages 19 to 20 that this purportedly improved search and learn approach is not in the claims. So, Judge Sanis said, bottom of Appendix 19, citing the specification, plaintiffs exalt a learning mechanism that allows richer keywords in cases to provide more accurate performance, an exemplary search and learn system that can learn from the users in a way that improves both effectiveness and efficiency. She quotes their brief, which was quoting 798 patent, column six, lines 35 to 39, and then the district court said, but the claims include only oblique references to cases and case information as information to be searched or stored. So she concluded that the search and learn approach that provides the purported benefit in the specification isn't in the claims. All right, but if it were in the claims, would it make a difference? It depends the level of detail that was in the claims. So if you're- Where have we said in a 101 case, it depends on the level of detail. That is for purposes of this question, if search and learn is in the claims, where have we said that it would make a difference at either step one or step two, how much detail there was with that technological improvement allegedly being in the claims? Well, what I mean by the level of detail, Your Honor, is you have to say how it's done. So specific steps that implement the improvement are required. That's the distinction between claims that merely recite a desired result or a function, right? So if you merely recited the desired result of search and learn, which is reducing complexity, if you said, you know, providing a result in response to a natural language query with reduced complexity, that would be the function and that wouldn't be sufficient detail. If you said how you do it using the steps of the search and learn approach, then we would have a question of, okay, are those steps conventional or not? But they haven't even recited those steps and so they don't have a purported improvement in the claim and that's what the district court held at appendix pages 19 to 20 and that holding was correct, Your Honor. So ERIE, SAP, and Recentive are dispositive here, Your Honor. They show that a database with new information content doesn't make claims patent eligible. They show that merely applying learning, machine learning generically to a new field of use doesn't make claims patent eligible. They show that having interconnected data in your database doesn't make claims patent eligible. They show that identifying combinations of information in the database doesn't make claims patent eligible. There's just no way for the claims here to overcome ERIE, SAP, and Recentive. Is it, it's correct, I think, that in Recentive the patent owner there did not claim to be improving how computers function. At least they conceded certain things that evidently are not conceded here. Do you agree with that? And if so, why would that not be a meaningful distinction? Well, I think the language that Mr. Zhu is pointing to in Recentive is about whether there's an improvement in the claims or not. So that's a legal question. Your Honors don't need the other side to concede that an improvement is not in the claims to look at the claims and see that there's no improvement to computer technology there. And many times this court has held the claims were directed to an abstract idea at step one, even where the appellant argued that the claims recited an improvement. This court has often held, for example, that if your improvement is merely identifying information by content or source to go in your database, that that's, as a matter of law, is not enough. And that's what we have here. There's four categories of information in the database. Appellants are arguing that that makes their claims patent eligible, that that's part of their improvement. But BSG, for example, at page 1288, explains that an improvement to the information stored in a database is not an improvement in database technology. Can I ask you, you wrote on page 34 of your red brief, because learning to understand language is a human mental activity, it is abstract as a matter of law. You didn't have recentive yet at the time you wrote the brief, so you cited Trinity Infomedia and personal web text. I'm not sure that those stand for such a broad proposition. Do you see recentive as standing for that broad proposition, that learning to understand language is abstract as a matter of law, and in particular because it's a human mental activity? The, in general, that, so one of recentive's rationales for holding that the machine learning there was abstract is because it was analogous to what humans did before. And so I think it's informative, but as we discussed earlier, it depends on whether there's, what I refer to it as a level of detail, but what I meant was if the how is in the claim. So you need a how that distinguishes the claim from human activity. And what Mr. Zhu has pointed to is case information, and all case information requires, even under the district court's interpretation at claim construction, is case-based reasoning generically. So if it's generic learning, then yes, that cannot, that is abstract because humans learn, and it cannot supply a technolog, excuse me, a technological solution. Okay, thank you. Mr. Zhu. Logan, your honors. Humans learn, computers compute. Now we heard a lot about the recentive decision from arguing counsel on the other side, and they mentioned that their recentive was talking about the invention being devoid from the claims. But specifically the court's decision at 1213 talks about how both the claims and the specification did not describe how any improvement could be accomplished. And that factual record and the factual record below here matters, your honor. Judge Stark asked a question about what are the material fact disputes here? And I guess our fact dispute is that the court below ignored the material facts. And they did this by ignoring the stipulation of the parties. Which material facts? Specifically, your honor, the fact that a person could not conduct the claimed invention in their mind, that's at appendix 3551 to 52, appendix 3233. Okay, let's assume that that's true. But is there any other material fact that the district court ignored? There is, your honor. Just to round out the record, there's also appendix 4069 to 70. But the other material fact was whether case-based reasoning was meaningfully reflected in the claims. Now both experts agreed to this in their expert report. The concept of case-based reasoning may be in the claims, but that mere concept of case-based reasoning doesn't render it non-abstract. The concept itself does not, your honor. But the fact that the district court ignored that case-based reasoning was at all reflected in the claims does matter. And that's stipulated at 3229 and at appendix 3156. I also want to direct the court to specifically the specification at column seven and column 16 through 17 below, which was discussed extensively in our briefing, both at the district court level and in our briefs here, where it discussed the search and learn in the claims, how to implement that with specific computational algorithms and how to enact the determination and the implementation in the claims. Sorry, your honor. What does search and learn mean? Searching a database, using the information within the database and within this context, the four different types of metadata categories and the connections between those metadata, and then conducting a constrained search, conducting case-based reasoning and adding new cases to the reference dictionary. Okay. I think we're out of time. Thank you. Thank you, your honors. Thank both counsel. Case is submitted.